**PRELOAD ENTERPRISES, Inc. et al. v. PACIFIC BRIDGE CO.**

Civ. A. No. 1195.

United States District Court
D. Delaware.

Oct. 28, 1949.

C. Edward Duffy (Logan, Duffy & Boggs), of Wilmington, Del., Richard K. Stevens, Robert F. Davis and Robert E. Watkins (Stevens, Davis, Miller & Mosher), of Washington, D. C., and Harry A. Poth, Jr. (Reid & Priest), of New York City, for plaintiffs.

Hugh M. Morris and George T. Coulson (Morris, Steel, Nichols & Arsht), of Wilmington, Del., A. W. Boyken and W. Bruce Beckley (Boyken, Mohler & Beckley), of San Francisco, Cal., and Samuel S. Stevens of San Francisco, Cal., for defendant.

RODNEY, District Judge.

This is a suit which seeks recovery for four causes of action: patent infringement, trademark infringement, unfair competition and unjust enrichment. The present questions arise upon motions made by the defendant under Rule 12, Federal Rules of Civil Procedure, 28 U.S.C.A., to dismiss the complaint and the causes of action therein set out. The defendant has moved to dismiss the complaint and all causes of action therein for failure to state a claim upon which relief could be granted, because the acts of the defendant complained of were done under a license granted to the defendant by a third party, viz., Preload Pacific Corporation, which was the grantee from the plaintiff of a territorial interest in all the Letters Patent and trademarks set forth in the complaint, and the acts complained of occurred within that territorial area. The defendant has also moved to dismiss the causes of action concerning patent and trademark infringement because the Preload Pacific Corporation, as the grantee of the territorial interest in the patents and trademarks, is an indispensible party to the action and is not so joined. The motion to dismiss the complaint and all causes of action for failure to state a claim upon which relief can be granted, Rule 12(b)(6), is to be considered as a motion for summary judgment under Rule 56.

The facts are comparatively simple and the legal questions, while difficult, are somewhat narrow in extent.

The plaintiffs and a group of associates (corporate, individual and co-partnership), known collectively as Preload Eastern, owned or controlled a number of patents and trademarks covering certain types of prestressed concrete construction and design known as the Preload Process. It was desired to have the types of work controlled by this patent position promoted, developed and used in the western part of the United States and specifically in the States of California, Oregon, Washington, Nevada, Arizona, Utah, Idaho, Montana, Wyoming, Colorado and New Mexico.

On April 15, 1947 Preload Eastern, including the plaintiffs and all persons owning or controlling the patents and trademarks, entered into a formal written agreement with the defendant. It was agreed that the defendant would create a new corporation to be called Preload Pacific Corporation, to which exclusive licenses concerning Preload Eastern's patents and trademarks should be transferred. The agreement set out in some detail the corporate setup of the new corporation and its capital structure. It was agreed that Preload Eastern would receive 30% of the total voting common stock and be entitled to designate three of nine directors. Attached to the agreement of April 15, 1947 between Preload Eastern and the defendant was an exact copy of an agreement which would subsequently be executed between Preload Eastern and Preload Pacific when the latter corporation should be formed. The new corporation, Preload Pacific, was duly formed and the agreement

executed on June 19, 1947 between it and Preload Eastern in exact conformity with the pre-incorporation agreement of April 15, 1947.

Subsequently, Preload Pacific entered into an oral non-exclusive license agreement (afterward reduced to writing under date of June 19, 1947) with Pacific Bridge Company (the present defendant) whereby the defendant could use the patents and trademarks upon a royalty basis and for a limited period of time within the eleven states above named. It is the authority of Preload Pacific to grant this use of the patents and trademarks to the defendant, Pacific Bridge Company, and the rights of the defendant under such grant that constitute the question under the first motion of the defendant.

■ In the various agreements above mentioned and in the papers filed in this court appear various designations as describing the interest in the patents, trademarks or in the use of them. Thus the interests are variously described as "assignee," "grantee," "licensee" and "sub-licensee." As said in Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 335, 34 L.Ed. 923, "Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." Consequently it becomes my duty to disregard the exact names used as indicating the right granted or received, but to determine the nature of such right from the instrument creating it. I must, therefore, pay particular attention to the agreement of June 19, 1947 between Preload Eastern and Preload Pacific to see what rights were granted to the latter corporation by that agreement.

■ The transferee of rights under a patent is generally given one of four names: (1) assignee; (2) grantee; (3) mortgagee; or (4) licensee. An assignment is a transfer of the entire interest in a patented invention or of an undivided portion of such entire interest as to every section of the

United States. There is little inherent distinction between an "assignment" and a "grant" except as to the territorial area on which it operates, and some authorities do not use the distinct term "grantee," but designate the conveyance as a "territorial assignment." The limitation of territorial area is the distinguishing feature between an assignment and a grant. They both convey for their respective territorial areas (viz., the assignment for the entire United States and the grant for a limited portion thereof) the entire interest in the patented invention or an undivided portion of such interest. An assignment and a grant convey both the property in the invention itself and the property in the monopoly created by the sovereign state. Since, concededly, the present case concerns a limited geographical area of eleven states, the present transfer may not be termed a general assignment. Since also there is here involved no question of a mortgage, so the nature of the instant transfer from Preload Eastern to Preload Pacific must be considered either a grant or a license.

■ The distinction between a grant on the one hand and a license on the other lies in the nature of the transfer. They may both apply to the same geographical area and they may both operate on the rights in the invention itself. They do not, however, both operate generally upon the monopoly granted by the sovereign state.

■■ As pointed out in 2 Robinson on Patents, Sec. 752 et seq., property rights in the invention itself may be transferred without restriction, but property rights in the monopoly are only divisible upon a geographical basis [1] and there can be no division of the monopoly within the same geographical area. Since, however, rights in the invention and monopoly are not always entirely separable and distinct, so the test as set out in 2 Robinson on Patents, Sec. 763, is as follows:

"If the conveyance vests in the alience the entire interest in the invention, or if it makes him a joint-owner with the alienor in such entire interest, it transfers the monopoly to the same extent as the inven-

[1]. See also 2 Walker on Patents (Deller's Ed.) p. 1437, Sec. 356.

tion, and is an assignment. But if it leaves in the alienor any exclusive right whatever in the invention, or if the rights conferred upon the alienee are not exclusive rights vesting in him alone or in him jointly with his alienor, the monopoly is not transferred and the conveyance is a license."

In Ellis on Patent Assignments and Licenses (2d Ed.), Sec. 57, p. 63, it is said:

"The broad fundamental practical difference between an assignment and a license is that the former gives the transferee the right to sue for infringement and the latter gives the transferee immunity from suit for infringement. The first gives positive rights, the second negative rights." Bloomer v. McQuewan, 14 How. 539, 549, 14 L.Ed. 532; Moto Meter Co. v. National Gauge and Equipment Co., D.C.Del.1929, 31 F.2d 994.

From an examination of the agreement in connection with the applicable authorities and considering the tests just given, I am of the opinion that Preload Pacific is a grantee or territorial assignee within the eleven-state area of the rights conveyed by the agreement. It becomes material to see what rights are covered by that agreement because from that contract and the matters reasonably implicit therefrom the true nature of the grant must be drawn.

The agreement is a formal document of some 23 pages and executed by all parties in interest.

A portion of the preamble states that Preload Eastern "desires to have the various types of work controlled by its patent position promoted, developed and used in and throughout * * *" the eleven western states hereinbefore mentioned. The continued and expanding use of the patents is clearly contemplated and is one of the prime purposes of the agreement.

By the first item of the agreement Preload Eastern grants to Preload Pacific "an exclusive unlimited license to make, use and sell" in and throughout all the eleven western states under all the patents, patent rights, patent applications and trademarks then owned or thereafter acquired. To the

agreement was annexed an extensive list of the United States and foreign patents and trademarks covered by the agreement.

It will be noted that this grant was not a partial one. It did not grant an exclusive right to make or to use or to sell or to do less than all of these. It did not grant a non-exclusive license to do all. It is an exclusive right to do everything that can be done with the patent right and is the grant both of the invention itself and of the monopoly. The right granted in the instant case is in exact conformity with 2 Robinson on Patents, Sec. 792, where it is said:

"To distinguish a grant from a license regard must be paid to the nature of the interest conveyed. The interest must be entire within the prescribed area and exclusive. A transfer of the right to make or use or sell, or of the exclusive right to make or use or sell does not convey the entire interest; the grant must operate on all three of these rights and be exclusive as to all; and a transfer that does not thus operate is a mere license. * * * An alienation of all the rights mentioned in the patent is an assignment or a grant according to the territorial limits fixed by the conveyance." [2]

The patent laws and the patent itself grant the exclusive right to make, use and sell the subject of the invention. This is precisely in exact language the grant from Preload Eastern to Preload Pacific and the grant, therefore, includes the exact right the grantor had. Nothing seems to be reserved to the grantor except two rights as subsequently appearing and hereafter discussed.

The particular question here involved is the right of Preload Pacific to grant a license. If Preload Pacific may not grant a license to use the invention and if the right of Preload Pacific is unlimited and exclusive within the area, then neither Preload Eastern nor any other party may grant a license within the area and a prime purpose of an expanding use of the patents will be defeated.

In Item 8 it is expressly agreed that Preload Eastern, through Preload Enterprises,

2. Paulus v. M. M. Buck Mfg. Co., 8 Cir., 1904, 129 F. 594, 596.

Inc., "will maintain, conduct and carry on an engineering department, development program and national advertising program with respect to Preload Eastern's patent position * * * but will not engage in actively and directly performing any work under such patent position. The active performance of work under the patent position is to be done by licensees and sub-licensees * * *." Unless the work contemplated has reference to the eleven-state area covered by the agreement, the item has no place in the agreement. If it does contemplate work within the eleven-state area and if Preload Pacific has an "unlimited and exclusive license to make, use and sell" within that area, then the licensees and sub-licensees who are to do the work must solely refer to Preload Pacific and those exercising rights under such company. The mere fact that those who are to do the work are called "licensees or sub-licensees" is not material. It means that the work shall be done by those who are granted the right to do such work by those who are entitled to grant such right.

In Item 13 Preload Pacific is expressly subrogated to all the rights of Preload Eastern within the eleven-state area against any infringement of the patents, patent rights, patent applications or trademarks, and all monies received as a result of any such infringement belong solely to Preload Pacific. If there be merit in the test as set out in Ellis (supra), then this test is expressly met by the language of the agreement. The failure of Preload Eastern to suffer from infringement by others within the territorial area, or the concomitant inability to profit from a successful prosecution of that infringement, must be clear evidence of the nature of the grant of the interest of the patentee.

A careful examination of the agreement shows two rights in the patents retained by the grantor. In Item 3 there is retained by Preload Eastern a so-called "limited and conditional" right to bid for certain work in the eleven-state area in case Preload Pacific determines not to enter a bid for such work, and if Preload Eastern is the successful bidder, there is retained the right to do such work. The right is limited to the individual instance and does not apply to any other work or project. So, to, in Item 13 certain rights are retained by Preload Eastern. As heretofore indicated that Item subrogates Preload Pacific to all rights of Preload Eastern as to recovery for infringement and makes the amount recovered for such infringement the property of Preload Pacific. The Item, however, provides that in case Preload Pacific fails or refuses to take action to prevent or stop such infringement within sixty (60) days after knowledge thereof, then Preload Eastern shall have the right to take such action directly and, in such case, the monies received or recovered shall belong to Preload Eastern. In either case, it will be noted, the rights of Preload Eastern are not absolute rights but arise only at the will of Preload Pacific and in case of its nonaction.

It would avail but little to consider the action of the parties under the agreement. Attached to the affidavits are exhibits showing the engineering services rendered by Preload Eastern for the defendant, a licensee of Preload Pacific. It may well be, as plaintiff contends, that it was thought that this work was actually being done for Preload Pacific. Attached to an affidavit was a letter from the Vice-President of the plaintiff to a third party, a copy of which letter was sent to Preload Pacific. In this letter the plaintiff, in speaking of Preload Pacific, says, "This new corporation has taken over all our rights and interests in the eleven western states, and our only remaining function is to do all the engineering design required of us in connection with work in this district."

 The particular and narrow question in this case is the right of Preload Pacific to grant to Pacific Bridge Co., the defendant, a license or right to use the patents, etc. in question. This right to license or grant the use of the patents, etc. can only exist in one who owns or has an interest in the property affected by the license. Chemical Foundation, Inc., v. E. I. duPont deNemours & Co., D.C.Del.1928, 29 F.2d 597. I have concluded that Preload Pacific is a grantee or territorial assignee as to the patents and as such must be entitled

to grant licenses. In Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 934, it was expressly stated that a mortgagee of a patent was entitled to grant licenses and receive license fees and royalties. Surely if a mortgagee has such right, then a general assignee or a grantee of a limited geographical area with "an exclusive unlimited license to make, use and sell" must have the same right.

I am of the opinion that I must grant the motion of the defendant to dismiss the complaint and all causes of action therein for failure to state a claim upon which relief can be granted.

The motion to dismiss for the given cause becomes, as hereinbefore stated, by Rules 12(b) and 56 a motion for summary judgment. Having found that Preload Pacific had a right to grant licenses to use the patents here involved, and it not being controverted that the defendant operated by virtue of a license from Preload Pacific, so the motion of the defendant for summary judgment must be granted.

The conclusion makes unnecessary the consideration of the two remaining motions of the defendant which, indeed, had they been initially considered, would still have required a consideration of the grounds of the first motion.

Woodson E. Norvell, Tulsa, Okl., for appellants.

Houston B. Tehee, Earl Boyd Pierce, Muskogee, Okl., Dennis Bushyhead, Tulsa Okl., and George E. Norvell, Oklahoma City, Okl., were on the briefs.

Ralph A. Barney, Oklahoma City, Okl., with whom was A. Devitt Vanech, Asst. Atty. Gen., for appellee. Jules H. Sigal, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and MADDEN, LITTLETON, WHITAKER and HOWELL, Judges.