**ZENITH ELECTRONICS CORPORATION,**
Plaintiff,

v.

**EXZEC INC., Terence J. Knowles, and Carroll Touch, Inc., Defendants.**

**EXZEC INC. and Carroll Touch, Inc., Counter–Plaintiffs,**

v.

**ZENITH ELECTRONICS CORPORATION, Counter–Defendant.**

No. 93 C 5041.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 3, 1995.

John M. Calimafde, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, Joel S. Feldman, Sachnoff & Weaver, Ltd., Chicago, IL, for plaintiff.

Roy M. Van Cleave, Tracy E. Donner, Keck, Mahin & Cate, Jean Dudek Kuelper, McAndrews, Held & Malloy, P.C., Robert E. Browne, Jeannine Marie Pisoni, Mark R. Galis, Vedder, Price, Jerold A. Jacover, James P. Naughton, Meredith Leigh Martin, Chicago, IL, for defendants.

*MEMORANDUM AND ORDER*

MANNING, District Judge.

This matter is before the court on the motion of defendants, ExZec, Inc. (hereafter "ExZec") and Terence J. Knowles, President of ExZec (hereafter Knowles") to join Elo Touch Systems, Inc. (hereafter "Elo Touch") as a necessary party to this action, pursuant to Federal Rule of Civil Procedure 19(b). Carroll Touch, Inc. also filed a motion to join Elo Touch as a necessary party and in the alternative, if joinder is not granted, pursu-

ant to Federal Rule of Civil Procedure 12(b)(7) and 19(b) to dismiss for failure to join a necessary and indispensable party. Plaintiff, Zenith Electronics Corporation (hereafter "Zenith") filed this action as the purported owner by assignment of the entire right, title and interest in and to the patents in question. The patents in question are United States Patent No. 4,644,100, entitled "Surface acoustic wave touch panel system" (hereafter "SAW"), issued on February 17, 1987; United States Patent No. 4,700,176, entitled "Touch control arrangement for graphic display apparatus", issued on October 13, 1987; and United States Patent No. RE 33, 151, entitled "Touch control system for controllable apparatus", issued on January 23, 1990 (hereafter patents in suit).

On March 7, 1994 Carroll Touch purchased the business of ExZec related to the "Sure-Touch" products with intent to manufacture, use and sell products of substantially the same construction. Zenith alleges that the trademark "SureTouch" infringes the patents in suit. Carroll Touch intervened as a party defendant.

Both ExZec and Carroll Touch have denied all allegations of infringement and counterclaimed for an order of non-infringement and a finding of invalidity of the Zenith patents in suit.

## BACKGROUND

On June 29, 1987, Zenith and Elo Touch (then Elographics, Inc.) entered into a formal written agreement granting Elo Touch an exclusive, worldwide license under the patents to make, have made, use, and sell and otherwise dispose of SAW Touch Products during the term of the agreement (hereafter "Zenith/Elo Touch Agreement"). Zenith reserved a non-exclusive, paid-up license, without the right to grant sublicenses, under the licensed patents to make, have made, use, sell and otherwise dispose of any product which includes a SAW Touch panel. Zenith granted Elo Touch, subject to the terms and conditions of the agreement, the right to grant non-exclusive sublicenses to third parties to make, have made, use, sell and otherwise dispose of licensed products within the scope of the exclusive license granted to Elo

Touch. The agreement provided that in the event a third party infringes a claim or claims of one or more licensed patents, Elo Touch may request Zenith to initiate and maintain legal action against such third party. If Zenith fails or refuses to initiate such a legal action, Elo Touch may initiate legal action in its own name. In 1994, the license agreement was expanded to include as much of the automotive field as Zenith is able to grant, subject to the prior exclusive license Zenith has with an automobile manufacturer.

According to defendants, the Zenith/Elo Touch agreement transferred all substantial ownership rights in the Zenith SAW Patents to Elo Touch. Defendants assert that Zenith has never sold any product or device incorporating any of the patents in question. On the other hand, Elo Touch has developed commercial products incorporating the patents. Defendants assert that: (1) Elo Touch controls the key witnesses and documents at the heart of this dispute, i.e., two Elo Touch employees are the persons with knowledge of the facts relating to the alleged infringement; (2) Elo Touch's testing and analysis of the ExZec panel was the basis for this action; and (3) Zenith's attorneys have stated that they are not sure whether Zenith can settle this action without Elo Touch's agreement; and therefore, Elo Touch must be joined as a necessary party because (a) the Zenith/Elo Touch Agreement transfers all substantial ownership rights in the Zenith SAW Patents to Elo Touch and is tantamount to an assignment; (b) defendants cannot be accorded complete relief, including the ability to defend against the infringement claims and pursue their defense of patent misuse, unless Elo Touch is joined as a party; and (c) defendants are subject to a substantial risk of future litigation and inconsistent obligations if Elo Touch is not joined.

Defendant Knowles was an employee of Zenith between April 18, 1966 and January 29, 1988. During his employment with Zenith, Knowles held a variety of engineering and managerial positions, including working on touch screen technology that is the subject matter of the patents in suit. In January 1988 Knowles left Zenith and formed ExZec which marketed SureTouch.

According to defendants, by November 1988, Knowles had discovered an entirely new touch technology which does not utilize SAW. At that time, Knowles incorporated ExZec, Inc. ExZec filed a number of patent applications covering this new technology based on Shear Waves (hereafter "ExZec Shear Wave Technology").

Zenith does not dispute ExZec's contention that in late 1991, Elo Touch contacted ExZec and representatives of Elo Touch met with representatives of ExZec in order to learn first-hand about the ExZec Shear Wave Technology. Following the meeting, Elo Touch requested a sample touch panel from ExZec which ExZec supplied in late 1991. Elo Touch formed an ExZec Team to study the ExZec Shear Wave Technology and Ex-Zec's patents.

According to ExZec, Elo Touch acknowledged that the ExZec Shear Wave Technology was substantially different from the SAW Technology covered by the Zenith SAW patents and that these differences stem from the fundamental differences between shear waves and SAW. Approximately one month later, in April 1993, Elo Touch pursuant to the provisions of the license agreement, put Zenith on notice of the alleged infringement of the Zenith SAW patents by ExZec. Reacting to the notice, Zenith, in a letter sent to ExZec in May 1993 by John Coult, Zenith's in-house attorney, accused ExZec of infringement. ExZec alleges that, in August 1993, prior to the filing of this lawsuit, Elo Touch contacted ExZec and offered to buy the ExZec Shear Wave Technology embodied in the ExZec patents, at a price substantially below offers ExZec had received from other parties.

Defendant Carrol Touch moves for joinder for reasons similar to defendant ExZec and Knowles, i.e., because: (1) Elo Touch is the exclusive licensee under the patents in suit; (2) Elo Touch initiated this lawsuit, possesses critical information on which defendants require full discovery, and controls key aspects of this case, including Zenith's ability to settle the case; and (3) the defendants would be subjected to multiple and inconsistent obligations if Elo Touch is not joined because

Elo Touch may bring suit itself on the patents in suit.

Plaintiff contends that the court should not join Elo Touch because (1) the license at issue is not exclusive; (2) defendants can be accorded complete relief without joinder of Elo Touch; and (3) defendants do not face a substantial risk of double, multiple or inconsistent obligations. Plaintiff maintains that Zenith retains the exclusive right to practice the patents in suit in touch screen products intended for use in automotive applications. Moreover, while the April 21, 1994 amendment modifies the non-exclusive field of use grant to Elo Touch, Zenith retains the right to cancel the transfer of a particular right connected to automotive applications under certain circumstances. Plaintiff asserts that it also retains the right to make, have made, use or sell and otherwise dispose of products incorporating the patents in suit within a subsystem, therefore, the license is not exclusive to Elo Touch because Zenith had retained significant rights to its patents in suit. Although not a party to this suit, Elo Touch, according to plaintiff, as a result of this litigation has retained outside counsel in both Emeryville, California, and local counsel in Chicago, and produced over 7000 pages of documents. Zenith claims defendants and the public face no risk of multiple or inconsistent obligations since Zenith and Elo Touch are in privity through their license and thus any decision concerning validity and/or infringement of the patents in suit will bind Elo Touch.

## DISCUSSION

The issue is whether the agreement between Zenith and Elo Touch transferred sufficient ownership interest in the patents in suit to constitute an assignment or subject defendants to multiple liabilities which requires joinder of Elo Touch as a necessary and indispensable party. The patent holder or assignee is a necessary party to an infringement action in order to avoid multiplicity of litigation. *Calgon Corp. v. Nalco Chemical Co.*, 726 F.Supp. 983, 985 (D.Del. 1989). If the conveyance vests in the transferee the entire interest in the invention, or it makes him a joint-owner with the transfer-

or in such entire interest, it transfers the monopoly to the same extent as the invention, and is an assignment. *Preload Enterprises, Inc. et al. v. Pacific Bridge Co.*, 86 F.Supp. 976, 978, 83 U.S.P.Q. 336 (1949). Also, an assignment gives the transferee the right to sue for infringement. *Ibid.*

Federal Rule of Civil Procedure 19(a) provides:

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the actions shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or in a proper case, an involuntary plaintiff."

Federal Rule of Civil Procedure 19(b) provides:

"If a person as described in subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether

the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

In *Novacolor, Inc. v. American Film Technologies, Inc.*, 1992 WL 170564, 1992 U.S.Dist. LEXIS 10315 (N.D.Ill.1992), the court granted defendant's motion to join Color Systems Technology (CST) and Hal Roach Studios (HRS) as necessary and indispensable parties. The court reasoned that CST and HRS would not be bound by the judgment rendered by the court, if they were not before the court. During April of 1986, Novacolor entered into an eight year agreement with HRS, wherein Novacolor granted HRS an exclusive right and license to use the subject matter included in Novacolor patents. Novacolor reserved the right, notwithstanding this exclusive grant of right, to grant a similar license to CST within two weeks of the effective date of the Novacolor/HRS agreement. The agreement granted HRS the right to enforce its exclusive grant of rights against third parties which infringe on Novacolor patents that pertain to the colorization of motion pictures except that this right shall not exist against CST.

In both agreements, Novacolor retained only the right to use subject matter falling within the scope of one or more claims of the Novacolor patents in the colorization of still monochrome photographs which did not originate from monochrome motion pictures. The agreement provided that in case of breach by HRS of its agreement with Novacolor, Novacolor was obligated to assign all rights previously granted to HRS to CST without any obligation on the part of CST to pay or assume HRS' payment obligations.

Defendants claimed that CST and HRS were necessary parties to the action within the meaning of Fed.R.Civ.P. 19(a), because they are assignees of the rights under the patent as opposed to mere licensees. Defendants contended that because CST and HRS could sue defendants later in their own name without having to join Novacolor, CST and HRS were both indispensable parties. In granting defendants motion to join CST and HRS, the court reasoned that Novacolor is the owner of the patent but ownership so substantially limited in enjoyment is not in any realistic sense ownership at all. The

Court held that under the terms of the licensing agreement, CST's and HRS' control over the Novacolor patents is so sweeping that they have become in economic reality the assignees of the patent.

In the instant case, Zenith retains title to the patents in suit, and Zenith grants Elo Touch an exclusive license to make, have made, use and sell products under the SAW technology. The license agreement was expanded to include as much of the automotive field as Zenith is able to grant, subject to the prior exclusive license Zenith has with an automobile manufacturer.

Elo Touch can transfer its rights under the patent without obtaining prior consent. Zenith reserved a non-exclusive, paid-up license, without the right to grant sublicenses, under the licensed patents to make, have made, use, sell and otherwise dispose of any product which includes a SAW Touch panel. Additionally, Zenith granted Elo Touch, subject to the terms and conditions of the agreement, the right to grant non-exclusive sublicenses to third parties to make, have made, use, sell and otherwise dispose of licensed products within the scope of the exclusive license granted to Elo Touch. The agreement provided that in the event a third party infringes a claim or claims of one or more licensed patents, Elo Touch may request Zenith to initiate and maintain legal action against such third party. If Zenith fails or refuses to initiate such a legal action, Elo Touch may initiate legal action in its own name.

The Zenith/Elo Touch agreement transfers all substantial ownership rights in the SAW patents in suit to Elo Touch. As in *Novacolor*, while Zenith is the owner of the patent, its ownership is so substantially limited in enjoyment that it is not in any realistic sense ownership at all. *Novacolor*, 1992 WL 170564, 1992 U.S.Dist. LEXIS 10315, 10330, citing *Gould v. Control Laser Corp.*, 462 F.Supp. 685 (M.D.Fla.1978). Additionally, as in *Novacolor*, under the terms of the licensing agreement Elo Touch's control over the Zenith patents is so sweeping it has become

in economic reality the assignee of the patent. *Ibid.* In accordance with Fed.R.Civ.P. 19(a), in the absence of Elo Touch, complete relief cannot be accorded among those already parties to this action; therefore, Elo Touch is a necessary party. *Vaupel Textilmaschinen v. Meccanica Euro Italia*, 944 F.2d 870, 876 (Fed.Cir.1991). Accordingly, since this court has determined that Elo Touch is an assignee with substantial ownership interest, Elo Touch would not be bound by this court's decision if Elo Touch were not made a party to this action. In order to avoid the uncertainty of subjecting defendants to a substantial risk of multiple litigation Elo Touch must be joined. *Water Technologies Corporation et al. v. Calco Ltd. et al.*, 576 F.Supp. 767, 769 (N.D.Ill.1983).

### CONCLUSION

For the reasons discussed above, this court grants the motion to join Elo Touch as a necessary party to this action.