**CALGON CORPORATION, Plaintiff,**

v.

**NALCO CHEMICAL COMPANY, Defendant.**

**Civ. A. No. 89–90–JRR.**

United States District Court,
D. Delaware.

Dec. 13, 1989.

---

Douglas B. Whitney, and Mary B. Graham, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Kevin J. McGough, of Merck & Co., Inc., Rahway, N.J., of counsel, for plaintiff.

James F. Burnett, and David A. Anderson, of Potter, Anderson & Corroon, Wilmington, Del., Henry L. Brinks, and Maxwell J. Petersen, of Willian Brinks Olds Hofer Gilson & Lione Ltd, Chicago, Ill., of counsel, for defendant.

## OPINION

ROTH, District Judge.

### FACTS

This is a patent infringement case. Plaintiff Calgon Corporation ("Calgon") and defendant Nalco Chemical Company ("Nalco") are both Delaware corporations. Calgon owns certain rights to United States Patent No. 4,656,059 ("the '059 patent"), which covers a treating agent and method for collecting surplus paint that allows automobiles and other objects to be painted more efficiently in a wet spray booth. Calgon alleges that Nalco has infringed the '059 patent. Title to the patent is held by Kurita Water Industries Ltd. ("Kurita"), a Japanese corporation, which is not presently a party to this action. Kurita transferred certain of its rights in the '059 patent to Calgon by agreement dated April 1, 1988.

There are presently two motions before the Court. Nalco has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1), claiming that this Court does not have subject matter jurisdiction. Nalco argues that 28 U.S.C. § 1338(a), the patent jurisdiction statute, limits district court jurisdiction to

actions commenced by the owners or assigns of the patent in suit and that Calgon cannot commence an action in its own name because Calgon is merely an exclusive licensee of Kurita.

Calgon opposes Nalco's motion to dismiss, arguing that it is an assignee of Kurita and thus can commence an action for patent infringement in its own name. Alternatively, Calgon has moved for leave to amend its complaint to add Kurita, the owner of the '059 patent, as an involuntary plaintiff pursuant to Fed.R.Civ.P. 15(a). Each motion will be discussed in turn.

## DISCUSSION

### I. NALCO'S MOTION TO DISMISS

Nalco has moved to dismiss the complaint pursuant to Rule 12(b)(1) on the ground that this Court does not have subject matter jurisdiction under 28 U.S.C. § 1338(a). Section 1338(a) provides:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents.... Such jurisdiction shall be exclusive of the courts of the states in patent ... cases.

Nalco argues that a patent infringement suit by an exclusive licensee is not a suit "arising under" the patent laws as required by section 1338(a) but an action based on the state-created contract rights of the licensee under the license agreement. Nalco contends that Calgon, which is an exclusive licensee of Kurita, does not possess a cause of action "arising under" the patent laws but possesses only an action based on its license agreement with Kurita and cannot invoke the jurisdiction of this Court (or any federal district court) except in a diversity action. Because Calgon and Nalco are both Delaware corporations, Nalco points out that there is no diversity of citizenship and urges the Court to dismiss Calgon's complaint.

Calgon makes two arguments in opposition to Nalco's motion to dismiss. First, Calgon claims that it is not an "exclusive licensee" of Kurita but is in fact an assignee and thus it can sue in its own name.

Second, Calgon maintains that, even if it is an exclusive licensee, it should be allowed to amend its complaint pursuant to Rule 15(a) to add Kurita as an involuntary plaintiff and cure any jurisdictional defect.

#### a) *Calgon Is Not an Assignee*

■ The owner of a patent or the owner's assignee can commence an action for patent infringement, but a licensee alone cannot. *See Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 466–67, 46 S.Ct. 166, 168–69, 70 L.Ed. 357 (1926); *Waterman v. Mackenzie*, 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891). If Calgon is then in fact an assignee of Kurita, Nalco's jurisdictional objection must fail.

To determine whether a party, bringing a patent infringement action, is an assignee or a licensee, courts look to the agreement between the patent owner and the party attempting to commence the action. *See Waterman*, 138 U.S. at 255–56, 11 S.Ct. at 335. When the transferred interest is deemed to be an assignment, the patent holder is not an indispensable party to the action, and the assignee can sue alone. The reason for this is that the United States patent laws create rights in the patent holder and provide for assignment of those rights. 35 U.S.C. § 261. Conversely, the rights created by a license agreement arise under state law and are controlled by state law. Licensees may be multiple and the extent and nature of their interests in the patented article may be of great variety and of different extents. Multiple litigation by licensees might permit differing decisions on the validity or infringement of a patent. For this reason, the patent holder or assignee is a necessary party to an infringement action in order to achieve consistency of interpretation and to avoid multiplicity of litigation. Under federal law, the patentee is the real party in interest in such litigation. *See Independent Wireless*, 269 U.S. at 466–67, 46 S.Ct. at 168–69; *Dentsply International, Inc. v. Centrix, Inc.*, 553 F.Supp. 289, 294 (D.Del. 1982).

■ In the present action, we must determine whether the agreement between

Calgon and Kurita was an assignment or a license of the '059 patent. If Kurita assigned the '059 patent to Calgon, then Calgon can sue alone. If, on the other hand, Kurita gave Calgon only a license, Calgon cannot maintain the suit as it now stands. For the reasons stated below, we find that the language of the agreement between Calgon and Kurita concerning the '059 patent demonstrates that Calgon is a licensee of Kurita.

■■■ The essential rights in any patent are the right of exclusivity, the right to transfer, and, most importantly, the right to sue infringers. *See Crown Dye & Tool Co. v. Nye Tool & Machine Works,* 261 U.S. 24, 35–39, 43 S.Ct. 254, 256–57, 67 L.Ed. 516 (1923); 2 P. Rosenberg *Patent Law Fundamentals* § 16.01[1][a], at 16–4 (1989 rev.). The United States patent laws provide for assignment of patent ownership. 35 U.S.C. § 261. Assignments of patent rights may be made and recorded in accordance with the statute, or a court may find a transfer of rights to be an equitable assignment. It does not matter whether the agreement that transfers rights under a patent calls itself an assignment or a licence; courts look to the substance of the agreement to determine what interest is transferred. *Waterman,* 138 U.S. at 256, 11 S.Ct. at 335.

■■■ In order for a transfer of patent rights to amount to an assignment under federal law the owner of the patent must transfer an undivided interest in the patent. As the Supreme Court stated in *Gayler v. Wilder,* 51 U.S. (10 How.) 477, 493, 13 L.Ed. 504 (1850):

[A] patentee may assign his whole interest, or an undivided part of it. But if he assigns a part under this section, it must be an undivided portion of his entire interest under the patent, placing the assignee upon an equal footing with himself for the part assigned. Upon such an assignment, the patentee and his assignees become joint owners of the whole interest secured by the patent.

Thus the only transfers that qualify as an assignment are transfers of: (1) an entire patent, i.e., all the rights embraced by letters patent; (2) an undivided, fractional portion of all rights embraced by the letters patent (such as a 30% interest); or (3) all the rights embraced by letters patent to any specified part of the United States. *See* P. Rosenberg, *supra,* at p. 16–7; *see also Zenith Radio Corp. v. Radio Corp. of America,* 121 F.Supp. 803, 804–05 (D.Del. 1954) (assignee must be placed on equal footing with patentee); *Preload Enterprises v. Pacific Bridge Co.,* 86 F.Supp. 976, 978–79 (D.Del.1949) (discussing various types of transfers). Because Kurita retains significant rights in the '059 patent, Calgon cannot commence an infringement action in its own name.

First, with respect to the right of exclusivity, Kurita retains title to the '059 patent, and Kurita grants to Calgon "an exclusive licence to make, have made, use and sell products under [the '059 patent]." (D.I. 14, Exhibit at Art. II, ¶ 1) Calgon's rights under this grant are subject to the right of Kurita and Kurita's affiliates to make and market products in the United States. (*Id.* at Art IV, ¶ 1) "Affiliate" is defined in the agreement as any business entity that is owned or controlled by Kurita or that owns or controls Kurita. Control is established by ownership of a majority of voting stock. It is possible to envision a multitude of circumstances in which Kurita's affiliates could exercise rights under the '059 patent against Calgon's exclusive right.

Second, Calgon cannot assign its rights under the '059 patent without obtaining Kurita's prior written consent. Section 261 provides that patents have the attributes of personal property. Just as the right to alienate personal property is an essential incident of ownership, the right to further assign patent rights is implicit in any true assignment. *See* P. Rosenberg, *supra,* at p. 16–8.

Kurita also retains a measure of control over infringement suits. Calgon cannot commence an infringement action unless it has notified Kurita of the infringement and given Kurita an opportunity to bring an action in Kurita's own name. (D.I. 14, Exhibit at Art. V, ¶¶ 1–3). There is no allega-

tion in the complaint that Calgon has given any notice to Kurita or that Kurita has refused to commence an infringement action to protect the '059 patent. Thus it is not clear that Calgon has a right under the *agreement* to commence this action. At any rate Calgon cannot be said to stand on "equal footing" with Kurita with respect to the right to sue when Calgon's right to sue is conditioned upon Kurita's right of first refusal.

We conclude that Calgon is not an assignee of Kurita.

### b) *Calgon Does Not Have Standing to Sue Alone*

■ Nalco has styled its motion as a motion to dismiss for lack of subject matter jurisdiction. Nalco argues that the patent owner must be named as plaintiff to confer subject matter jurisdiction on the district court. However, contrary to Nalco's position, we find that the limitation on a licensee's ability to sue is grounded on standing doctrine, not on the patent jurisdiction statute, 28 U.S.C. § 1338. The reasons for this conclusion will be discussed below.

Nalco's argument that this Court does not have jurisdiction over this action is based on *Independent Wireless*, 269 U.S. at 466–67, 46 S.Ct. at 168–69, in which the Supreme Court stated:

> A suit without the owner of the patent as a plaintiff if maintainable would not be a suit under § 4921 of the Revised Statutes but only an action in equity based on the contract rights of the licensee under the license and a stranger's violation of them. There would be *no jurisdiction* in courts of the United States to entertain it unless by reason of diverse citizenship of the parties, which does not exist in this case.

269 U.S. at 466–67, 46 S.Ct. at 168–69 (emphasis added). Viewed in isolation, this language suggests that federal district courts do not have subject matter jurisdiction over infringement actions commenced in the name of a licensee. However, an examination of the *Independent Wireless* opinion reveals that Chief Justice Taft's primary concern in that case was to determine the circumstances under which a li-

censee could protect its rights under that license if the patentee/licensor was beyond the reach of process and refused, upon being given notice, to join the suit.

> By a request to the patent-owner to join as co-plaintiff, by notice of the suit after refusal and the making of the owner a co-plaintiff, he is given a full opportunity by taking part in the cause to protect himself against any abuse of the use of his name as plaintiff, while on the other hand the defendant charged with infringement will secure a decree saving him from multiplicity of suits for infringement. Of course, a decree in such a case would constitute an estoppel of record against the patent owner, if challenged, only after evidence of the exclusive license, the request to join as co-plaintiff and the notice of the suit.

269 U.S. at 474, 46 S.Ct. at 171. Chief Justice Taft then went on to distinguish the *Independent Wireless* case from his earlier opinion in *Crown Dye & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516 (1923), in which he affirmed the dismissal of the action by the district court. In the *Crown Dye* case, the licensee had made no effort to bring the patent owner into the case. Chief Justice Taft therefore concluded in *Independent Wireless* that:

> There is nothing in the case of *Crown Company v. The Nye Tool Works*, 261 U.S. 24, [43 S.Ct. 254, 67 L.Ed. 516] which conflicts with this conclusion [as set out above]. That case was brought by the plaintiff, the licensee, to establish as a principle of patent practice that a transfer by an owner of a patent to another, conferring only the right to sue a third party for past and future infringements of the patent, without the right to make, use and vend the patented article, was an assignment of the patent under § 4898 R.S. We decline so to hold. *There was no offer to make the owner of the patent a party, nor were there any facts showing that the owner would not join as a co-plaintiff or was not in the jurisdiction.* The appellant stood

solely upon his right to sue as an assignee of the patent and was defeated. 269 U.S. at 474–75, 46 S.Ct. at 171–72 (emphasis added).

In conjunction with Chief Justice Taft's finding in *Crown Dye* that the case must be dismissed because the owner of the patent was not a party to the suit, one must also consider his finding at the outset of the opinion that petitioner's position, that the court had no jurisdiction because the suit did "not arise under the patent laws of the United States," was "without merit." 261 U.S. at 33, 43 S.Ct. at 255.

> The bill in this case is based on an assignment of a patent claimed to be valid under the statutes of the United States, and asking the protection of the patent right thus assigned by injunction and an accounting. It, therefore, involves the validity of the assignment of a patent, *which is a question arising under the patent laws because it depends upon their construction,* and if the assignment is valid, the suit is just an ordinary suit for injunction and profits dependent on the validity of the patent and its infringement under those same laws.

*Id.* (emphasis added).

It becomes clear then that *Crown Dye* and *Independent Wireless* find subject matter jurisdiction existed when the suit presented a question "arising under the patent laws." The reason for the dismissal in *Crown Dye* was not lack of subject matter jurisdiction but lack of a necessary party.

The present patent jurisdiction statute, 28 U.S.C. § 1338, giving exclusive jurisdiction of patent cases to our federal courts, contains similar language to that in effect during the 1920's and cited by Chief Justice Taft in *Crown Dye:* "any civil action arising under any Act of Congress relating to patents...." Procedurally, however, the situation was very different in the 1920's than it is today. In 1936, the Federal Rules of Civil Procedure were enacted. Rule 1 of these new rules abolished in the

federal courts the difference between law and equity. At the time *Independent Wireless* had been decided, however, there were two forms of action for patent infringement: an action at law, which allowed a licensee to sue *in the name* of a patentee, and an action in equity, which did not have a nominal plaintiff procedure. *See Independent Wireless,* 269 U.S. at 464–65, 46 S.Ct. at 168. The case presented to the *Independent Wireless* Court was a suit in equity, so that the nominal plaintiff procedure was not available to the licensee. The Court reasoned that, because it was exercising equitable jurisdiction, it should allow the plaintiff in equity to accomplish the same end as the plaintiff at law and join the patent owner.[1] To reach this decision the *Independent Wireless* Court interpreted sections of the patent laws that pertained to parties, not jurisdiction. In fact, the Court did not once mention the jurisdictional predecessor of section 1338(a). *See* Pub.L. No. 61–475, § 24, para. 7, 36 Stat. 1087, 1092 (1911).

■ Since *Independent Wireless* was decided, the "nominal plaintiff" procedure available in actions at law has been eliminated. Today, 35 U.S.C. § 281 provides that "[a] *patentee* shall have remedy by civil action for infringement of his patent." (emphasis added). There is no provision for actions brought in the patentee's name. Yet the equities formerly present in the equitable action inhere in both injunctive and damage actions today. The exclusive licensee should, in equity, be able to commence an action for infringement when the patent owner refuses to vindicate his rights. There is an implied obligation on the part of the patent owner to allow his name to be used by the exclusive licensee. *Independent Wireless,* 269 U.S. at 469, 472, 46 S.Ct. at 169, 170; *Sheldon v. West Bend Equipment Corp.,* 718 F.2d 603, 606 (3d Cir.1983).

If the "jurisdictional" requirement alluded to in *Independent Wireless* is not derived from section 1338(a) then it must

---

1. In this case Calgon seeks monetary and injunctive relief. If Calgon had brought this action in 1926, when *Independent Wireless* was decided, it could have simply brought an action for damages in Kurita's name, as nominal plaintiff.

arise elsewhere. The general trend among courts and commentators is to call the *Independent Wireless* requirement a "standing" requirement. *See, e.g., Duplan Corp. v. Deering Milliken Research Corp.*, 522 F.2d 809, 813–14 (4th Cir.1975) (exclusive licensee has *standing* to prosecute infringement suit as a co-plaintiff with the patent owner); *Afros S.P.A. v. Krauss–Maffei Corp.*, 671 F.Supp. 1402, 1445–46 (D.Del.1987) (assignee did not have *standing* to sue unless assignment was effective on the date of the alleged infringement); 5 D. Chisum *Patents* § 21.03[2] at 21–159 (1989) (analyzing licensee jurisdictional limitation in terms of standing). It is appropriate to describe the requirement that a patent owner be joined in order for a licensee to assert an infringement as a standing requirement. The focus of the requirement is on the party seeking to have its claim adjudicated rather than on the existence of a federal question. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 484, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982). Any action for patent infringement requires analysis of the patent laws, and because of this is the paradigm of a suit "arising under" the patent laws. 5 Chisum ¶ 21.02[i][b], at 21–18. When the *Independent Wireless* Court stated that there would be "no jurisdiction", absent diversity, over an action commenced by a licensee, it was enunciating this standing requirement rather than a federal question requirement.[2]

The remedy used now under the Federal Rules of Civil Procedure to bring in a necessary party, like a patentee, is Rule 19. Rule 19(a) allows parties who are "necessary" to be joined involuntarily. The Advisory Committee Note to original Rule 19 cited *Independent Wireless* as an example of this involuntary joinder. Since Rule 19's enactment, patent infringement cases that raise the issue of non-joinder of the patent owner have most often been decided under the rubric of Rule 19. *See Tycom Corp. v. Redactron Corp.*, 380 F.Supp. 1183 (D.Del. 1974) (discussing the use of Rule 19 joinder in patent infringement suits).

When Rule 19 was amended in 1966, the Advisory Committee cited two patent cases to illustrate the proper application of the Rule 19(b) test for the elements of prejudice required to determine if a party is indispensable and therefore dismissal necessary. *A.L. Smith Iron Co. v. Dickson*, 141 F.2d 3 (2d Cir.1944); *Caldwell Manufacturing Co. v. Unique Balance Co.*, 18 F.R.D. 258 (S.D.N.Y.1955). Since that time, this Court has relied almost exclusively on Rule 19 to resolve the difficult joinder question in patent infringement suits. *See Erbamont, Inc. v. Cetus Corp.*, 720 F.Supp. 387, 392–96 (D.Del.1989); *Dentsply*, 553 F.Supp. at 293; *Tycom*, 380 F.Supp. at 1187; *Catanzaro v. International Tel. & Tel.*, 378 F.Supp. 203, 205 (D.Del.1974). This repeated reference to Rule 19 suggests that the need for the patent owner is not a jurisdictional subject matter prerequisite, but is a problem of joinder and proper parties.

To summarize, then Nalco's jurisdictional argument is incorrect because it relies on section 1338(a). Nevertheless, Calgon does not have standing to sue for patent infringement in its own name. The Court must dismiss this action unless Calgon can amend its complaint to add Kurita as a plaintiff. This brings Calgon's motion for leave to amend its complaint squarely into focus.

## II. CALGON'S MOTION TO AMEND

Calgon has moved for leave to amend its complaint to add Kurita as a plaintiff pursuant to Rule 15(a). If Calgon's amendment is allowed, this case can proceed with Kurita as a plaintiff. Nalco argues that Rule 15 cannot be used to "create" jurisdiction. However, this argument is based on

---

**2.** This conclusion is supported by decisions in which courts have assumed they had jurisdiction under § 1338(a) even though the action was commenced by a licensee and there was no diversity between the parties. *See Tycom Corp. v. Redactron Corp.*, 380 F.Supp. 1183, 1185

(D.Del.1974) (court had jurisdiction under section 1338(a) over action brought by exclusive licensee despite failure to join patent owner as indispensable party and despite absence of diversity jurisdiction).

the misconception that Kurita's presence is necessary to create subject matter jurisdiction. As we have pointed out above, the problem is not lack of subject matter jurisdiction, but lack of an indispensable party. This defect can be cured if the indispensable party can be brought into the suit.

■ However, Calgon still faces a significant obstacle based on the limits of this Court's *in personam* jurisdiction. Even though Rule 15(a) permits amendment of pleadings to bring in a necessary party, by Calgon's own admission this Court does not have personal jurisdiction over Kurita. *See* Complaint ¶ 6. Assuming that Calgon amends its complaint, it remains to be seen whether Kurita will join this action voluntarily, or, failing Kurita's voluntary appearance, whether Kurita can be joined as an "involuntary" plaintiff. The proper context for a party to be made an "involuntary" plaintiff is pursuant to a motion under Rule 19, and Calgon has not made a motion under Rule 19.[3] *Cf. Dublin Water Co. v. Delaware River Basin Comm'n,* 443 F.Supp. 310, 315 (E.D.Pa.1977) (Rule 15(a) motion dismissed as moot when plaintiffs' Rule 19 motion was denied).

Calgon's decision to file and brief its motion under Rule 15(a) is unfortunate in one respect because the Court has been deprived of briefing and argument on whether this is a "proper case" for Kurita to be joined as an involuntary plaintiff under Rule 19(a), or whether dismissal is mandatory under the factors noted in Rule 19(b). To decide a motion under Rule 19 it would be useful to know whether Calgon has requested Kurita to join this action voluntarily, *see Independent Wireless;* whether Kurita would be subject to the process of some other court with subject matter jurisdiction over · this action; and whether Kurita will be bound by a final judgment in this action if not joined. None of these issues were adequately addressed' on the present motion, and the Court is reluctant to guess at them here.

■ The unusual procedural posture of this case presents a novel question. If the Court denies Calgon's motion for leave to amend its complaint, Calgon will be out of court because it lacks standing. Under *Independent Wireless* Calgon should be given a procedural option to avoid this inequitable result. However, Calgon cannot use Rule 15 to add Kurita involuntarily if Kurita refuses to join this action voluntarily. Guided by the mandate of Rule 1, Fed.R.Civ.P., that the Rules are to be construed to "secure the just, speedy, and inexpensive determination of every action," the Court will permit Calgon to amend its complaint pursuant to Rule 15 to add Kurita as a plaintiff. However, because Calgon does not have standing to sue in its own name, and because Rule 15 cannot be used to join involuntary plaintiffs, this action will be dismissed after 30 days if Kurita does not enter a voluntary appearance. We will also give Calgon leave to file a Rule 19 motion to join Kurita as an involuntary plaintiff within the 30 days if Calgon should determine that Kurita will not enter a voluntary appearance. In so providing, we are not, however, ruling that a Rule 19 motion will be granted. That decision will require further briefing and consideration.

## CONCLUSION

Calgon's motion for leave to amend its complaint to add Kurita as a plaintiff will be granted. If Kurita does not enter a voluntary appearance within 30 days, this action will be dismissed. Calgon may file a motion under Rule 19 to join Kurita as an involuntary plaintiff at any time before expiration of the 30 days.

---

**3.** The Court also questions whether the involuntary plaintiff procedure is available when the absent party is beyond the reach of the Court's process. *Compare Catanzaro,* 378 F.Supp. at 209 (involuntary plaintiff procedure may be un-

constitutional when used to join a party who is beyond the reach of the court's process), *with, Sheldon v. West Bend Equipment Corp.,* 718 F.2d 603, 606 (3d Cir.1983) (suggesting that the involuntary plaintiff procedure retains vitality).