**SCHERING CORPORATION and Biogen, Inc., Plaintiffs,**

v.

**AMGEN INC., Defendant.**

**Civil Action No. 96–587 MMS.**
**United States District Court,**
**D. Delaware.**

Argued May 7, 1997.

Decided June 24, 1997.

Steven J. Balick, John S. Grimm of Ashby & Geddes, Wilmington, DE (Gerald Sobel, of counsel), Aaron Stiefel, Richard A. De Sevo and Daniel DiNapoli, of Kaye, Scholer, Fierman, Hays & Handler, L.L.P., New York City, for plaintiffs.

Richard K. Herrmann, of Stradley, Ronon, Stevens & Young, L.L.P., Wihnington, DE (John J. McDonnell, Daniel A. Boehnen and Grantland G. Drutchas of McDonnell Boehnen Hulbert & Berghoff, Chicago, IL, of counsel), Lloyd R. Day, Jr., of Cooley, Godward L.L.P., Palo Alto, CA, D. Dennis Allegritti of Burns & Levinson L.L.P., Boston, MA, for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### I. INTRODUCTION & PROCEDURAL BACKGROUND

On December 3, 1996, Schering Corp. ("Schering") sued Amgen, Inc. ("Amgen") in the District of Delaware for infringement of U.S. Patent No. 4,530,901 (the "'901 patent"). The '901 patent, which will be described in slightly more detail below, generally covers recombinant DNA molecules and their use in producing human interferon–like polypeptides. On January 22, 1997, Amgen filed a declaratory judgment action against Schering and Biogen, Inc. ("Biogen"), the title owner of the '901 patent, in the Central District of California. On January 24, 1997, Amgen responded to Schering's lawsuit in the District of Delaware with a motion to dismiss; Amgen alleged Schering lacked standing and had failed to join Biogen, an allegedly indispensable party. On February 4, 1997, Schering amended its complaint and Biogen joined as a second plaintiff. Amgen withdrew its motion to dismiss.

Schering and Biogen then filed a motion in this Court to enjoin Amgen's declaratory judgment action in California. In an effort to quell the tsunami of paper this case was generating so rapidly and ominously on both coasts, this Court suggested the proper forum for litigation over the '901 patent should be resolved via a motion to transfer. The parties then stipulated that (1) Amgen would file a motion to transfer in this Court, and (2) this Court's decision as to the proper forum would be binding upon the parties in the California lawsuit. Accordingly, Amgen has filed a motion to transfer all pending litigation concerning the '901 patent from the District of Delaware to the Central District of California. For the following reasons, Amgen's motion to transfer will be denied.

### II. FACTUAL BACKGROUND

#### A. A Brief Sketch of the Technology

Since 1957, biomedical scientists have known that interferon, a naturally occurring protein found in the human body, was one of the immune system's major defenses against viruses. They were hamstrung by what they did not know, however—a quick and inexpensive method to produce large quantities of interferon. In the past, interferon was extracted from human white blood cells, a lengthy and expensive procedure. As a result, whether injecting interferon into the human body could fight viral diseases ranging from hepatitis to the common cold and perhaps even cancer remained a mystery. Hope remained tempered by frustration.

That is, until 1980, when Dr. Charles Weissman discovered a way to make interferon in bacteria. No longer were white blood cells the only source for interferon. Weissman's discovery enabled production of interferon on a scale and by methods that were previously unavailable. Consequently, experimental use of interferon began in earnest, and the Food & Drug Administration ("FDA") eventually approved an alpha interferon product, Intron A, in 1985. The '901 patent, which covers the production of interferon as invented by Weissman, issued on July 23, 1985. Today, according to Schering, Intron A is used to combat hairy–cell leukemia, AIDS–related Karposi's Sarcoma, and sundry varieties of hepatitis, among other viral diseases. ("D.I.") 27 at 2, ¶ 3. Intron A is marketed in over sixty countries and generates annual sales of over $60 million. *Id.* at 2, ¶ 4.

#### B. Schering's Rights Under the '901 Patent

The '901 patent issued to Biogen, N.V., a Netherlands Antilles corporation, in 1985. Events occurring both before and after 1985 are relevant for determining what happened to the rights under the '901 patent. The rights and relationships of the parties are best understood when these events are viewed chronologically.

In 1979, Biogen, N.V. granted Schering "a world–wide, exclusive royalty–bearing license in the Field of the Agreement, with the right to grant sublicenses," to practice all Biogen inventions within the "Field of the Agreement." D.I. 28 at Exhibit ("Exh.") A–21. The "Field of the Agreement" was defined as "products for the treatment, prevention, cure

or diagnosis of illness, injury or disease in or to humans and or animals[,]" the "operative effect" of which is "achieved by biological or chemical rather than physical means." D.I. 28 at Exh. A-7, 8. Schering was also given the right to assign its rights with the consent of Biogen, N.V.; consent was not to be "unreasonably withheld." D.I. 28 at Exh. A-71, 72. All other patent rights were retained by Biogen, N.V. D.I. 28 at Exh. A-24. Further, Schering granted back to Biogen, N.V. rights not in the "Field of the Agreement," such as the rights to products "intended for use as general laboratory reagents." *Id.* In addition, Schering did not have the right to sue third parties who were selling unlicensed products as defined in the "Field of the Agreement" between Schering and Biogen, N.V. D.I. 28 at A-56.

In a July 1, 1982 agreement, along with a December 30, 1983 letter, Biogen, N.V. granted Biogen, B.V., a Dutch corporation, the right to license third parties to manufacture, use, and sell alpha interferon products. D.I. 28 at Exh. B. In 1983, Biogen, N.V., Biogen, B.V., and Schering agreed to substitute Biogen, B.V. for Biogen, N.V. as a party to the 1979 agreement. D.I. 28 at Exh. C. Then, on July 23, 1985, the '901 patent issued to Biogen, N.V. D.I. 29 at Exh. M-5.

For our purposes, things remained stagnant for three years. Then, in June of 1988, Biogen, N.V. reincorporated in Delaware and became Biogen, Inc. D.I. 28 at ¶ 6.[1] In September of 1988, Biogen, B.V. transferred to Biogen, Inc. all rights, title, and interest under the 1979 Agreement. D.I. 28 at Exh. E. In November of 1988, Biogen, Inc. informed Schering that "the rights and obligations of Biogen" under the 1979 Agreement between Biogen, B.V. and Schering "have been transferred to and assumed by Biogen, Inc." D.I. 28 at Exh. F.

In 1989, Schering and Biogen, B.V. amended the 1979 Agreement. Under the 1989 Amendment, Schering was granted an exclusive royalty-bearing license "in all fields, with the right to grant sublicenses, to practice the invention [of the '901 patent]." D.I. 28 at Exh. G-1. Biogen, B.V. also granted Schering "the sole and exclusive right to sue and to recover all damages caused by the infringement, active inducement of infringement, and/or contributory infringement within the United States [of the '901 patent] and to enjoin preliminar[il]y and permanently those infringing activities." D.I. 28 at Exh. G-2. In return, Schering gave Biogen a non-exclusive royalty-free license under the '901 patent, in fields other than the Field of the Agreement. *Id.* This 1989 Amendment was acknowledged in a 1992 Amendment of the 1979 Agreement, executed by Biogen, Inc. and Schering. D.I. 28 at Exh. H.

Schering is a New Jersey corporation with its principal offices within the subpoena power of this Court. D.I. 29 at ¶ 2. Biogen is a Massachusetts corporation with its principal place of business in the metropolitan Boston area. *Id.* Amgen is a Delaware corporation headquartered in California.

## III. DISCUSSION

28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This action could have been brought in the Central District of California.[2] Amgen now seeks to transfer it there.

As the text of the statute indicates, the Court must examine (1) the convenience of the parties, (2) the convenience of the witnesses, (3) and the interest of justice, in determining whether transfer is proper. The Third Circuit Court of Appeals has emphasized this is a broad inquiry; a district court must examine "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the

1. Biogen, Inc. became a Massachusetts corporation in September of 1988. D.I. 28 at ¶ 6.

2. A civil action for patent infringement "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Since Amgen is headquartered in California and much of the events giving rise to this litigation took place in California, the action could have properly been brought in the Central District of California.

interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). While cautioning "there is no definitive formula or list of factors to consider," *id.*, the court identified potential factors which it characterized as either private or public interests.

■ Among the private interests are: (1) plaintiffs' forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Id.* (citations omitted).

■ Public interests include: (1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, and (5) the public policies of the fora. *Id.* (citations omitted). With these standards in mind, and recognizing the list offered by the *Jumara* court is merely illustrative, not exhaustive, the Court will analyze the interests of the parties as implicated by Amgen's motion to transfer.

## A. Private Interests—Plaintiffs' Forum Preference

■ A plaintiff's choice of forum is entitled to substantial deference and "should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970) (citations omitted), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Put another way, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Id.* This deference is especially due when the plaintiffs have chosen their forum because of "legitimate, rational concerns." *Waste Distillation Tech., Inc. v. Pan Am. Resources,*

*Inc.*, 775 F.Supp. 759, 764 (D.Del.1991). *Jumara* did not alter these principles, and none of the parties quibbles with them. Rather, this motion to transfer is, as far as the Court can tell, unique; the central dispute is not over *whether* a plaintiff's choice of forum should be emphasized appropriately, but over *which* party should be properly considered the plaintiff. Indeed, the dispute can be narrowed even more considerably than that on these undisputed facts: On December 3, 1996, Schering sued Amgen in the District of Delaware for infringement of the '901 patent. Amgen responded not by answering, but by filing a declaratory judgment action against Schering and Biogen, the owner of the '901 patent, in the Central District of California on January 22, 1997. Two days later, on January 24, 1997, Amgen filed a motion to dismiss in the District of Delaware alleging Schering lacked standing. Finally, on February 4, 1997, Schering amended its complaint in Delaware to include Biogen as a fellow plaintiff.

In a nutshell, Amgen argues its choice of forum—the Central District of California—should be accorded significant weight because Schering lacked standing when it filed its complaint and Amgen's action for declaratory judgment represents the first time a court properly acquired subject matter jurisdiction over the controversy surrounding the '901 patent. Schering disagrees, of course, and counters with two arguments: one, the District of Delaware had jurisdiction on December 3, 1996 with the filing of the initial complaint and must be considered first–filed, and two, even if there were a defect in the original complaint, its amendment on February 4, 1997 adding Biogen cured the defect and makes it first–filed anyway.

### 1. Did Schering have standing as of December 3, 1996?

■ The Patent Act of 1952 provides "a patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (1988). Ordinarily, standing to sue rests with the legal title holder to the patent. *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1130 (Fed.Cir.1995). Occasionally,

those who do not own the patent can sue for infringement. As the Federal Circuit Court of Appeals has stated:

A licensee may obtain sufficient rights in the patent to be entitled to seek relief from infringement, but to do so, it ordinarily must join the patent owner. And a bare licensee, who has no right to exclude others from making, using, or selling the licensed products, has no legally recognized interest that entitles it to bring or join an infringement action.

*Id.* at 1131. To elaborate, an entity which is not the title holder of the patent has standing to sue on its own only when it has received "all significant rights under the patent" through assignment from the patentee. *Ortho Pharm. Corp. v. Genetics Inst., Inc.,* 52 F.3d 1026, 1030 (Fed.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 274, 133 L.Ed.2d 195 (1995). *See also Independent Wireless Telegraph Co. v. Radio Corp. of America,* 269 U.S. 459, 466–67, 46 S.Ct. 166, 168–69, 70 L.Ed. 357 (1926); *Waterman v. Mackenzie,* 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891); *Procter & Gamble Co. v. Paragon Trade Brands, Inc.,* 917 F.Supp. 305, 307 n. 2 (D.Del.1995). Courts in this district have looked to three indicia to determine whether a licensee has been assigned "all significant rights under the patent": (1) the right of exclusivity; (2) the right to transfer; and (3) most importantly, the right to sue infringers. *Procter & Gamble,* 917 F.Supp. at 307 n. 2; *Pfizer, Inc. v. Elan Pharm. Research, Corp.,* 812 F.Supp. 1352, 1372 (D.Del.1993).

Amgen argues Schering had no rights in the '901 patent and thus had no standing when it filed suit in Delaware in December of 1996. The Court has already recited the relevant facts, of course, but at this point a brief chronological summary is helpful. Close attention must be paid to the rights to the '901 patent (italicized below), because what follows can be likened to the dizzying, high–stakes legerdemain of a seasoned curbstone practitioner of three–card monte.

**1979:** Biogen, N.V. grants to Schering an exclusive license in the Field of Agreement. Schering has right to assign, with consent from Biogen, N.V. Schering grants back to Biogen, N.V. some rights, including rights with regard to products "intended for use as general laboratory reagents." Biogen, N.V. retains right to sue infringers.

**July 1982:** Biogen N.V. grants to Biogen, B.V. the right to license third parties to use and sell interferon.

**1983:** Biogen N.V., Biogen, B.V., and Schering agree to substitute Biogen B.V. for Biogen N.V. as party in 1979 Agreement. *The Result:* Biogen B.V. grants to Schering an exclusive license in the Field of Agreement. Schering has right to assign, with consent from Biogen, B.V., not to be unreasonably withheld. Biogen, B.V. is granted back some rights, including rights with regard to products "intended for use as general laboratory reagents" and retains right to sue infringers.

**July 23, 1985:** *'901 Patent issues to Biogen, N.V.*

**June 1988:** *Biogen, N.V. merges with and becomes Biogen, Inc., of Massachusetts.*

**August 1988:** Biogen, B.V. transfers to Biogen, Inc. all of its rights to 1979 Agreement. *The Result:* under the terms of the 1979 Agreement, Biogen, Inc. grants to Schering an exclusive license in the Field of Agreement. Schering has right to assign, with consent from Biogen, Inc., not to be unreasonably withheld. Biogen, Inc. granted back some rights, including rights with regard to products "intended for use as general laboratory reagents" and retains right to sue infringers.

**November 1988:** Biogen tells Schering of assignment of rights under 1979 Agreement.

**1989:** *Biogen, B.V. and Schering amend the 1979 Agreement; Biogen, B.V. grants to Schering an exclusive royalty-bearing license "in all fields, with the right to grant sublicenses, to practice the invention [of the '901 patent]." Biogen, B.V. also grants Schering "the sole and exclusive right to sue and to recover all damages caused by the infringement, active inducement of infringement, and/or contributory infringement within the United States [of the '901 patent] and to enjoin prelimi-*

*nar[il]y and permanently those infringing activities." In return, Schering gives Biogen, B.V. a non-exclusive royalty-free license under the '901 patent in fields other than the Field of the Agreement.*

**1992:** In a separate and unrelated agreement, Schering and Biogen, Inc. acknowledge the existence of the 1989 Amendment.

Schering presses only one source of standing as of its December 3, 1996 lawsuit against Amgen—the 1989 Amendment executed by Biogen, B.V. and Schering, and acknowledged in 1992 by Biogen, Inc. This is only sensible; Schering did not receive "all significant rights" under the 1979 Agreement because it did not have the right to sue infringers. *See Pfizer, Inc.,* 812 F.Supp. 1352, 1373 (D.Del.1993).

To repeat one last time, the 1989 Amendment is between Biogen, B.V. and Schering; Biogen, B.V. purports to grant Schering "the sole and exclusive right to sue and to recover all damages caused by the infringement, active inducement of infringement, and/or contributory infringement within the United States [of the '901 patent] and to enjoin preliminar[il]y and permanently those infringing activities." There was a fundamental flaw in this transaction, however; *Biogen, B.V. never had any rights in the '901 patent to give.* As the time line above reveals, the '901 patent issued in 1985 to Biogen, N.V., which became Biogen, Inc. in 1988. Biogen, Inc., who held title and rights to the patent, was not a party to the 1989 Amendment. It follows, then, that Biogen, B.V. never had authority to assign rights to the '901 patent. The 1989 Amendment was, it would seem, a nullity.

Realizing there is a gap in the chain of title to the '901 patent, Schering has submitted the affidavit of Frederic A. Eustis, III. In 1989, Eustis was vice president and general counsel of Biogen, Inc. and he states he "executed the 1989 Amendment as attorney-in-fact for Biogen B.V. fully intending to convey to Schering the rights set forth in the 1989 Amendment, through Biogen B.V., a wholly owned subsidiary of Biogen, Inc." D.I. 28 at ¶ 11. Under Federal Circuit jurisprudence, the court must examine the licensing agreement "to determine whether the parties intended to effect a transfer of proprietary rights to the licensee." *Ortho,* 52 F.3d at 1032. The Eustis affidavit shows, Schering argues, that Biogen, B.V. acted with the actual authority, or at least the apparent authority, of Biogen, Inc. *See Taylor v. Peoples Natural Gas Co.,* 49 F.3d 982, 989 (3d Cir. 1995) ("It is well settled that apparent authority (1) results from a manifestation by a person that another is his agent, and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized.") (quoting RESTATEMENT (SECOND) OF AGENCY § 8, cmts. a & c (1958) (internal quotation marks omitted)). *See also Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA,* 944 F.2d 870, 874 (Fed.Cir.1991) (intent is key in determining whether agreement is license or assignment). Finally, Schering asserts, Biogen, Inc. ratified the 1989 Amendment by accepting millions of dollars of royalty payments.

Amgen attacks this premise on several fronts. First, Amgen argues there was no reasonable basis for Schering to believe Biogen, B.V. had authority to bind Biogen, Inc. in the 1989 Amendment. Amgen points to a August 1988 agreement between Biogen, B.V. and Biogen, Inc. D.I. 28 at Exh. E. In the agreement, Biogen, B.V. assigned to Biogen, Inc. all of its license agreements, including the 1979 Agreement with Schering. Schering was notified of the assignment to Biogen, Inc. in a November 8 letter. D.I. 28 at Exh. F. Based on these two documents, Amgen argues Schering could not reasonably believe Biogen, B.V. had the power to bind Biogen, Inc. because if Biogen, B.V. was the agent of Biogen, Inc., there would be no reason for Biogen, B.V. to assign license agreements to Biogen, Inc.

This argument ignores the undisputed fact that Schering switched its royalty payments to Biogen, Inc. in 1990. It appears Biogen, B.V. registered no complaint; Biogen, Inc. certainly was not complaining either. While Amgen has tried to minimize this by arguing it demonstrates Schering's acknowledgment that Biogen, B.V. had no authority to amend the patent license, this does nothing to dispel

the strong inference of ratification by Biogen, Inc.

Amgen's second argument is much stronger. Amgen argues a patent licensee cannot possess standing unless there is an actual transfer of substantive rights; conveyance of rights via apparent authority or ratification will not suffice. To buttress this view, Amgen relies on a combination of precedent and policy. Amgen likens this case to *RAD Data Communications, Inc. v. Patton Electronics Co.*, 882 F.Supp. 351 (S.D.N.Y.), *dismissed,* 64 F.3d 675 (1995), in which the district court was confronted with an assignment of patent rights laden with logistical problems similar to those here. The patents in dispute in *RAD Data* were owned by a company called Sedco. *Id.* at 352. By early November 1994, a deal had been worked out: Sedco would assign the patents to a third party, Develcon, and then Develcon would assign them to plaintiff. *Id.* As apparently the case here, however, the best-laid plans went awry. Develcon and plaintiff executed their half of the assignment on November 7, 1994, but the Sedco/Develcon assignment was not executed until two days later, on November 9, 1994. *Id.* When sued by plaintiff, the alleged infringer moved to dismiss because plaintiff did not have legal title when the suit was brought. *Id.*

The district court dismissed plaintiff's argument that the intent of the parties could erase the technical defects in the transfer of title, and that transfer was effected after Develcon received legal title to the patents. "35 U.S.C. § 261 makes the effective date of an assignment the date that it was signed by the purported patent owner[,]" the court reasoned. *Id.* at 353. Because Develcon did not receive title to the patents until two days after it had purportedly assigned them to plaintiff, "plaintiff did not have valid legal title to the Develcon patents, Develcon did." *Id.* Accordingly, the district court dismissed the claim for lack of subject matter jurisdiction. Intent may be paramount in determin-

ing what rights have been granted in a licensee agreement, but the lesson Amgen would have drawn from *RAD Data* is that intent cannot create a valid assignment agreement when the assignor had no rights to assign.

The standing requirements in patent cases prevents, among other things, the risk of multifarious litigation. *See Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F.Supp. 305, 310 (D.Del.1995). Amgen argues it was subjected to this very risk when Schering filed the Delaware action in its own name without a valid assignment of rights. If Amgen had not filed a motion to dismiss and an action of its own in California,[3] it asserts, the '901 patent controversy might have been litigated through a verdict; if Biogen then decided to sue, Amgen would discover finality was only an illusion.

■ Amgen's argument is extremely persuasive. But resolution of this particular dispute is unnecessary. As demonstrated below, even if Schering did not have standing to sue alone, joinder of Biogen in the amended complaint cured any standing defects. The key issues then become these: assuming Schering lacked proper standing until it amended its complaint to add Biogen as a fellow plaintiff, whose action is first–filed, and which party's choice of forum is entitled to deference?

## 2. If Schering had no standing, who filed first?

■ Amgen asserts the Central District of California first acquired subject matter jurisdiction over this controversy because Schering lacked standing to file suit on December 3, 1996 without Biogen. Amgen further argues Schering's amended complaint, filed February 4, 1997, which included Biogen as a party plaintiff was insufficient to confer retroactive subject matter jurisdiction in this Court; Rule 82 of the Federal Rules of Civil Procedure expressly provides "[t]hese rules shall not be construed to extend or limit the

---

**3.** Schering argues that its inclusion as a defendant in Amgen's California declaratory judgment action reveals Schering has standing to prosecute alleged infringers. There are two deficiencies to this thesis. First, it does not shed light on whether Schering alone has standing to enforce claims under the '901 patent; Biogen is a codefendant in the California action. Second, Amgen's complaint seeks a declaration that Schering "lacks standing to pursue litigation over the Weissman '901 patent." D.I. 29 at Exh. N, ¶ 14.

jurisdiction of the United States district courts ..." The California action, filed on January 22, 1997, should therefore be considered first–filed, Amgen concludes, and its choice of forum should be accorded deference.

This argument has ample superficial allure. It withers under close scrutiny, however, because Amgen has confused standing with subject matter jurisdiction.

The patent jurisdiction statute, 28 U.S.C. § 1338(a), provides "[t]he district courts shall have original jurisdiction of any civil action *arising under* any Act of Congress relating to patents ..." (emphasis added). Amgen cannot seriously maintain the original Schering complaint, which alleged infringement of the '901 patent, did not arise under the patent laws of the United States. It follows, therefore, the Delaware district court—this Court—acquired subject matter jurisdiction on December 3, 1996, the date Schering filed its original complaint.

Amgen argues subject matter jurisdiction did not attach because Schering was not the appropriate party–plaintiff to bring the lawsuit. But, in theory, this argument goes not to whether the court has subject matter jurisdiction, but to who is the proper party to bring a lawsuit. This latter question—the question of "whether a specific person is the proper party to bring a particular matter to a federal court for adjudication[ ]"—presents an issue of standing. ERWLN CHEMERINSKY, FEDERAL JURISDICTION § 2.3.1 (2d ed.1994).

There are constitutional requirements for standing, such as injury, causation and redressability. *In re Grand Jury*, 111 F.3d 1066, 1071 (3d Cir.1997). Schering has met these three constitutional requirements. But Schering nonetheless may not be the appropriate party to enforce the '901 patent because of prudential limitations on its standing.

■ Prudential limitations are not mandated by Article III. Rather, they are judicial creations of restraint, designed "to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Id.* at 1072 (quoting *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir. 1994)). In patent infringement cases, the prudential limitation on standing is that bare licensees cannot sue without joining the patent owner. *See Abbott Labs*, 47 F.3d at 1131. This prudential limitation on standing in a complaint for patent infringement serves a variety of purposes; limiting the right of a bare licensee to sue alone for patent infringement prevents the issuance of advisory opinions, insulates the alleged infringer from successive bouts of litigation instituted by (potentially numerous) parties with only fractional interests in the patent, and preserves the ability of the party with the most rights at stake to prosecute alleged infringers. *See Independent Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468, 46 S.Ct. 166, 169, 70 L.Ed. 357 (1926); *Procter & Gamble Co.*, 917 F.Supp. at 310. Amendment to include the patent owner merely alleviates a prudential limitation of standing; it does not, as Amgen asserts, "create" subject matter jurisdiction.

Given the above statutory and doctrinal analysis, it is unsurprising that then–district judge Roth, in *Calgon Corp. v. Nalco Chemical Co.*, 726 F.Supp. 983, 987 (D.Del.1989), thoroughly considered and rejected an argument similar to that made by Amgen. In *Calgon*, the court found the plaintiff was not an assignee of the legal title to the patent and therefore did not have standing to sue alone. The alleged infringer moved to dismiss the case for lack of subject matter jurisdiction, making the same argument Amgen makes here—that the patent owner must be named as plaintiff to confer subject matter jurisdiction on the district court. *Id.* The *Calgon* court held the requirement that a patent owner be joined in order for a licensee to assert an infringement action "is not a jurisdictional subject matter prerequisite, but is a problem of joinder and proper parties." *Id.* at 989. Accordingly, the court denied the motion to dismiss for lack of subject matter jurisdiction, and granted the plaintiff leave to amend pursuant to Rule 15 of the Federal Rules of Civil Procedure to add the patent owner as a plaintiff. *Id.* To the objection by the accused infringer that "Rule 15 cannot be used to 'create' jurisdiction," the court re-

sponded "this argument is based on the misconception that [the patent owner]'s presence is necessary to create subject matter jurisdiction. As we have pointed out above, the problem is not lack of subject matter jurisdiction, but lack of an indispensable party." *Id.* at 989–90. *Calgon* is on all fours with this case.[4]

Amgen concedes the addition of Biogen cured any standing defect in the Delaware action; Amgen's primary objection is that amendment cannot be used to create retroactive jurisdiction. This argument is misplaced. When Schering filed suit in December of 1996, this Court acquired subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a). Biogen's presence was unnecessary to infuse this Court with subject matter jurisdiction.

Amgen's second argument is related to its first; Amgen asserts Schering's amended complaint does not "relate back" to the original complaint. For the reasons rehearsed above, this argument is misdirected. This Court first acquired subject matter jurisdiction over the dispute in December of 1996. Accordingly, the Delaware action is considered first–filed, regardless of the addition of a new party in February. *See Advanta Corp. v. Visa U.S.A., Inc.,* 1997 WL 88906, at *3 (E.D.Pa. Feb. 19, 1997) ("Advanta cannot avoid application of the first–filed rule simply by asserting that it was not initially a party to the earlier filed action. The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute."); *see also E.E.O.C. v. University of Pa.,* 850 F.2d 969, 970 (3d Cir.1988) ("In all cases of federal concurrent jurisdiction, the court which first has possession of

the subject must decide it."), *aff'd on other grounds,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). A "relation-back" inquiry is unnecessary; the point of inquiry is the original complaint, not the amended complaint.

Even if relation back were an issue (which it is not), Schering's complaint would be considered first–filed. Amgen argues Schering's amended complaint should not relate back to its original complaint because Rule 15(c) of the Federal Rules of Civil Procedure requires a mistake of identity; tactical maneuvering to avoid discovery requirements— which is what Amgen alleges Schering has engaged in here—will not permit relation back. Amgen's position has been rejected, however, by the Second Circuit Court of Appeals in *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11 (2d Cir. 1997).

In *Advanced Magnetics,* the plaintiff AMI asserted claims it had acquired through an assignment agreement from various shareholders. The assignment agreement turned out to be invalid. The alleged infringer fought AMI's motion to amend to add the shareholders by characterizing the omission of the shareholders as plaintiffs as not a mistake, but "tactical" and "strategic." The *Advanced Magnetics* court rebuffed this charge, stating "there plainly was a mistake as to the legal effectiveness of the documents to permit AMI to sue as assignee." *Id.* Absent evidence the incorrect interpretation of the documents was itself deliberate or tactical, or the assignment was undertaken in bad faith, the court held, and absent unfair-

4. The most closely analogous case Amgen has cited in support of its position that amendment of the complaint to substitute a new plaintiff will not cure a jurisdictional defect is *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889 (2d Cir. 1983). In *Pressroom,* a pension fund filed suit under ERISA. The jurisdictional provisions of ERISA do not allow pension funds to assert a cause of action, see 29 U.S.C. § 1132(e)(1); for this reason, the district court dismissed the complaint and, more importantly for our purposes, denied the Fund's motion for leave to amend the complaint to substitute plan participants as plaintiffs. *Pressroom,* 700 F.2d at 891, 893. The

Second Circuit Court of Appeals affirmed, reasoning "the Fund seeks not to remedy inadequate jurisdictional allegations, but rather to substitute a new action over which there is jurisdiction for one where it did not exist." *Id.* at 893.

Unlike the ERISA jurisdictional grant, the patent jurisdiction provision, 28 U.S.C. § 1338(a), does not limit the district courts to those cases brought by certain designated parties. As the court in *Calgon* accurately noted, the restriction as to who may bring a civil action for patent infringement is a limitation on standing, not subject matter jurisdiction. 726 F.Supp. at 987.

ness to defendants, amendment should have been allowed. *Id.* at 21.

The position taken by the *Advanced Magnetics* court is a reasonable one and this Court adopts it. There is no evidence Schering's belief as to the validity of the 1989 Amendment was anything but in good–faith.

Similarly, Amgen's position that Schering's amendment must be pigeonholed as joinder of an indispensable party under Rule 19 of the Federal Rules of Civil Procedure is rejected. The reason Amgen presses this point is relation back does not apply to joinder pursuant to Rule 19. But there is no mention of Rule 19 in Schering's amended complaint; apparently, Schering amended its complaint without leave of court pursuant to Rule 15.

Schering filed the original complaint; as the plaintiff, its choice of forum is "a paramount consideration" and "should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970).

### B. Other Private Interests

■ The parties primarily focus on one other private interest—the convenience of non–party witnesses.[5] *See Jumara*, 55 F.3d at 879. This Court recently discussed the subsidiary factors in weighing this interest. "[W]hat is key at this nascent stage of the litigation is the Court's impression of the nature of prospective testimony to be given by the witness—does it go to an important issue, is it cumulative, is a witness employed by a party and therefore available in any fora, and like considerations." *Sherwood Med. Co. v. IVAC Med. Sys. Inc.*, 1996 WL 700261, at *4 (D.Del. Nov. 25, 1996). Amgen has identified five non-party witnesses who are subject to compulsory process in the Central District of California but not the District of Delaware and who have not evinced a willingness to testify in Delaware.

Two of those witnesses, a Mr. Blatt and Dr. Myron Tong, are former Amgen employees and were involved with clinical research and development of the accused products. Amgen expects to call them as witnesses regarding Amgen's alleged clinical trial exemption under 35 U.S.C. § 271(e)(1), which exempts the use of certain patented biological inventions, so long as that use is solely and "reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products." Amgen also asserts Blatt and Tong will testify as to a defense against a charge of infringement under the doctrine of equivalents.[6] According to Amgen, Blatt and Tong will provide factual testimony regarding the reactions of patients in the clinical trials who were administered the accused product.

Schering has successfully deflated the importance of these two witnesses. First, Schering notes that Amgen has announced it will launch marketing activities regarding the accused product by the end of 1997. Since it is unlikely trial will commence in this case by the end of this year, any testimony regarding a 35 U.S.C. § 271(e)(1) exemption may be irrelevant. Further, Schering has not as yet pressed a theory of infringement under the doctrine of equivalents and it has given no indication it intends to do so. Finally, Amgen has not represented either Blatt or Tong would be unavailable if trial were held in Delaware. *See Sunds Defibrator, Inc. v. Durametal Corp.*, 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997); *Media Group, Inc. v. Turtle Wax, Inc.*, 1996 WL 756760, at *6 (D.Del. Dec. 23, 1996).

Amgen also points to Drs. David Goeddel and Herbert Boyer. These two witnesses participated in a U.S. Patent Office interference proceeding against Biogen concerning a related but different patent. In that proceeding, asserts Amgen, Drs. Goeddel and Boyer explained the disclosure of the related patent failed to enable production of alpha

---

5. As this Court posited in *Sunds Defibrator, Inc. v. Durametal Corp.*, No. Civ. A. 96–483, 1997 WL 74660, *3 (D.Del. Jan.31, 1997): "Each party is able to procure attendance of its own employees for trial." Therefore, at issue is only non–party witnesses.

6. The doctrine of equivalents permits a finding of infringement "when someone steals the heart of an invention but avoids the literal language of the claim by making a noncritical change." HERBERT F. SCHWARTZ, PATENT LAW & PRACTICE 82 (2d ed.1995).

interferon. If their testimony at trial dovetails with their testimony in the interference proceeding, it is likely Drs. Goeddel and Boyer will be appearing as experts. Experts are typically paid, of course, and presumably would appear whether the forum was in California or Delaware.

Finally, Amgen has pointed to Jim Chamberlain, whom Amgen expects to testify in support of a laches and estoppel defense. Two things need be noted about Chamberlain. First, a laches and estoppel defense appears inconsistent with a § 271(e)(1) exemption defense; more specifically, it will be difficult for Amgen to maintain on the one hand that Schering has sat on its rights to prosecute alleged infringers, and on the other hand that Schering could not have pursued an infringement action against Amgen because Amgen's activities were protected by the § 271(e)(1) exemption. Since Amgen has announced it will market the accused product by the end of this year, both defenses—and Chamberlain's testimony—may be anachronistic. Second, "[l]aches and estoppel are equitable defenses, committed to the sound discretion of the trial court." *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292 (Fed.Cir.1992). As such, and without an apparent factual overlap in the current record among jury issues and Amgen's equitable defenses, any testimony regarding laches and estoppel would be heard by the Court, not a jury. *See Refac Int'l, Ltd. v. Matsushita Elec. Corp. of Am.*, 1990 WL 269885, at *3 (D.N.J. Nov.14, 1990); *Dewey Elecs. Corp. v. Montage, Inc.*, 117 F.R.D. 73, 74 (M.D.Pa. 1987). Accordingly, live testimony becomes less of a premium, and Chamberlain's videotaped testimony will suffice.

At argument, Schering focused on Dr. Yitzhak Stabinsky, who developed the accused products for Amgen. Stabinksy is subject to compulsory process in Delaware. Schering has asserted it is "virtually certain" it will call Stabinsky as a witness in its case-in-chief. D.I. 32 at 72, lines 18–19. While on the surface this would appear a highly unusual tactical move, it is true Stabinsky will likely be a vital witness. Amgen has extracted a promise from Dr. Stabinsky that he will attend trial in either California or Delaware—assuming his expenses were paid, of course—but as this Court noted in *Sherwood Medical Co. v. IVAC Medical Systems, Inc.*, an assurance that a named inventor will appear at trial is not equivalent to having him subject to the subpoena power of the trial court. 1996 WL 700261, at *5.

Amgen has also argued many of the relevant documents and records are scattered throughout California, Colorado, or Switzerland. There are two short responses to blunt this argument: One, in the modern, spare–no–expense world of well-heeled companies involved in patent litigation, transferring documents from the West Coast to Delaware poses no large obstacle, and two, transferring the case to California would not appreciably alleviate the cost of relocating relevant documents found in Colorado or Switzerland.

These factors, when compared to the strong deference accorded a plaintiff's choice of forum, do not warrant transfer.

## C. Public Interests

■ Emphasizing it is headquartered in California and has laboratory facilities in that state, Amgen argues the public interests favor transfer to the Central District of California. Amgen has also noted that much of the events giving rise to this litigation took place in California, and Delaware has little or no meaningful connection to this dispute. This characterization of the nature of the dispute is disingenuous, however. First, although headquartered in California, Amgen is a Delaware corporation. More significant, however, is the nature of the dispute in this case. Intron A, which is allegedly developed from the patented product, is sold internationally and generates millions of dollars in revenues. The dispute over the '901 patent can hardly be described as a local California controversy, or implicating public policies unique to California. *See Jumara*, 55 F.3d at 879. Accordingly, the public interests in this case do not tip the balance of convenience strongly in favor of Amgen. An order will be entered denying Amgen's motion to transfer.